# UNITED STATES DISTRICT COURT

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

OCT 05 2009

Stephan Harris, Clerk
Cheyenne

DISTRICT OF WYOMING

UNITED STATES OF AMERICA

V.

**CLAY E. MCDONALD**

CRIMINAL COMPLAINT

CASE NUMBER: 09 MJ 181-J

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

1. On or about **June 27, 2008,** in the District of Wyoming, the Defendant, **CLAY E. MCDONALD,** for the purpose of executing and attempting to execute a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations and promises, did knowingly transmit by means of wire communications in interstate and foreign commerce, certain signs, signals, and sounds for the purpose of executing such scheme or artifice to defraud, that is wire communications (Western Union Money Transfers), between the Defendant, Clay E. McDonald, in the state of Wyoming, and Van Ngo, in Toronto, Canada, and Vasile Nicolae Ghuita, in Bucharest, Romania, which money transfers totalled $2650.

**In violation of 18 U.S.C. § 1343.**

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT OF FEDERAL BUREAU OF INVESTIGATION
SPECIAL AGENT SEAN LISTER

Continued on the attached sheet and made a part hereof: ✓ Yes    No

_____
Signature of Complainant
Sean Lister

Sworn to before me and subscribed in my presence,

October 5, 2009                        at    Cheyenne, Wyoming
Date                                         City and State

**Hon. William C. Beaman**
**U.S. Magistrate Judge**                    _____
Name & Title of Judicial Officer              Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## SPECIAL AGENT SEAN LISTER
## U.S. vs CLAY MCDONALD

1. I, Sean Lister, your affiant, am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed for over 3 years at the Cheyenne, Wyoming Resident Agency. While in the FBI, assignments have included general criminal, cyber crime, and terrorism investigations. Prior to employment with the FBI, I was employed as a Senior Investigator with the California State Board of Equalization for approximately 5 years. As a Senior Investigator my duty was to conduct felony tax fraud investigations.

2. Based upon the results of investigation conducted by your affiant, your affiant believes there is sufficient evidence to show that for the period of June 17, 2008, through July 1, 2008, Clay E. **MCDONALD** knowingly and willfully participated in a scheme intended to obtain money by wire by means of false and fraudulent pretenses, representations and promises.

3. On July 9, 2008, First Interstate Bank (FIB) Corporate Security Officer Justin Svec contacted the FBI office in Cheyenne, Wyoming, to advise that he believed a bank account which had been recently closed may have been involved in fraudulent activity. Furthermore, Svec advised that the closed account had been held jointly in the name of Clay E. **MCDONALD**, Susan K. McDonald, and Leland R. McDonald (Susan and Leland are Clay's parents). Svec sent a facsimile to provide the FBI with 38 pages of supporting documentation.

4. On or around July 10, 2008, your affiant reviewed the supporting documentation and found the following:

a. FIB Savings Account #920002045 was opened by the McDonalds' at the Laramie, Wyoming branch on June 27, 1997.

b. From March 2008 through June 15, 2008, there was no activity on the account and the balance remained at $9.91.

c. On June 16, 2008, a wire in the amount of $6,800 from an account held by Lori Ellis at First National Bank of Georgia in Georgia, was deposited into FIB Savings Account #920002045.

d. On June 17, 2008, Clay **MCDONALD** withdrew $6,800 from FIB Savings Account #920002045.

e. On June 24, 2008, a wire in the amount of $5,800 from an account held by Deborah Cooey at BB&T, a commercial financial institution in West Virginia, was deposited into FIB Savings Account #920002045 in Laramie, Wyoming.

f. On June 25, 2008, another $5,800 was wired into FIB Savings Account #920002045 in Laramie, Wyoming, from an account at BB&T in Virginia that was held in the name of Charles Hiles.

g. On June 26, 2008, two wires in the amount of $2,900 each were deposited into the FIB Savings Account #920002045 in Laramie, Wyoming, by Deann Sander from her account at Centier Bank in Indiana.

h. On July 3, 2008, Janice Davis of BB&T, contacted the Wire Department at First Interstate Bank (FIB) advising that a BB&T customer, Deborah Cooey,

        was requesting the return of funds that she wired into FIB Savings Account #90002045, due to fraud. According to Davis, Cooey indicated the $5,800 was wired into the FIB Savings Account #920002045 as a payment for a boat she purchased on internet auction website Ebay.com, but had not received.

    i.    Thereafter, an FIB employee confirmed that Ellis and Sanders had fallen victim to a similar fraudulent scam.

    j.    Included in the documentation provided by Svec were copies of three "Savings Withdrawal" slips for Savings Account #920002045. The Savings Withdrawal slips totaled $25,200 and were signed by Clay **MCDONALD** at 1354 ½ N. 6th Avenue, Laramie, Wyoming, 82012. The $25,200 figure represents the total loss in this case.

    k.    Other documentation included email correspondences to and from Ellis regarding the purchase of a Searay boat via internet auction website Ebay.com.

5.    On July 14, 2008, your affiant and Special Agent Richard P. Fanelli conducted a voluntary interview of **MCDONALD**. **MCDONALD** was told he was free to ask the agents to leave or terminate the interview at anytime. **MCDONALD** chose to answer questions. The interview was conducted at the residence of **MCDONALD's** parents, located at 1354 North 6th Street, Laramie, Wyoming. **MCDONALD** indicated that he resided at 1354 ½ North 6th Street, Laramie, Wyoming. **MCDONALD** admitted to withdrawing the funds that were wired into the FIB Saving Account #920002045. **MCDONALD** stated that once the funds were wired into his account he would

withdraw the funds, keep 10-20% for himself, and send the rest of the funds via Western Union to individuals in Canada and Romania. **MCDONALD** knew the individuals as Kevin Ngo (also known as Van Ngo), of Toronto, Canada, and Vasile Nicolae Ghuita, of Bucharest, Romania. **MCDONALD** stated that he met Ngo and Ghuita on the internet while playing online games such as World WarCraft. Initially, **MCDONALD** denied having knowledge of the origin of the funds, but later admitted that he knew "somebody is getting ripped off." **MCDONALD** said he later found out that the source of the funds may have been from a scam on Ebay. **MCDONALD** stated he was not surprised because he knew the money had to be fraudulently obtained. **MCDONALD** further admitted that even though he knew the funds were fraudulently obtained he kept participating in the scheme because "it was good money, an easy way to get out of debt, and I'm an idiot." **MCDONALD** believed he had about $130 left. He said he used the rest of the money to buy a 1993 Jeep Cherokee, food, alcohol, and to pay down a $600 credit card. **MCDONALD** obtained a total of $7,700 for himself as his commissions.

6. On July 14, 2008, your affiant seized Western Union customer receipts, PayPal debit cards, mail from PayPal with a debit card inside, an envelope with a forwarding address, the laptop computer that was used by **MCDONALD** to correspond with the individuals in Canada and Romania. The seizure was conducted after McDonald signed a written authorization to conduct a search. A subsequent examination of the Western Union customer receipts confirms statements by **MCDONALD** that he sent funds via Western Union to individuals in Canada and Romania. A total of $16,500 was wired to Canada and Romania by Clay **MCDONALD**.

7. On August 14, 2008, your affiant and SA Fanelli interviewed Susan McDonald, mother of Clay **MCDONALD**, who stated that FIB Savings Account #920002045 was a joint account that was set up for **MCDONALD** when he was younger. While on vacation, her husband, Leland McDonald noticed unfamiliar wire transfers into the account. When questioned by Leland McDonald, Clay **MCDONALD** stated that the funds were from selling clues for online games. Leland McDonald told Susan McDonald that he felt something was wrong, and, thereafter, Susan went to FIB and requested to have herself and Leland McDonald taken off the account. However, an FIB representative advised that they could not be taken off the account, so on June 30, 2008, Susan McDonald closed the account.

8. On August 14, 2008, your affiant interviewed two friends of **MCDONALD**, Kolbin Bertilson and Aaron Garcia. Bertilson stated that he never specifically talked to **MCDONALD** about the money being sent out of the country. However, on one occasion, Bertilson received a text message on his mobile phone from **MCDONALD** asking Bertilson to open a bank account so that money could be deposited into it and, subsequently, be sent out of the country. Garcia said **MCDONALD** requested Garcia open an account as well for the same purpose. According to Garcia, **MCDONALD** told him he met the individuals he was sending the money to while playing online poker. **MCDONALD** told Garcia the funds were derived from sales of VCRs, DVD players, and cars. Garcia told **MCDONALD** the way he was getting the money "didn't seem legit," he was "dumb" for doing it, the scam "sounded like money laundering," and that "it was gonna catch up with him."

9. Based on the information provided above, your affiant believes that Clay E. **MCDONALD** knowingly and willfully participated in a scheme intended to obtain money by wire by means of false or fraudulent pretenses in violation of Title 18 United States Code Section 1343.

**END OF AFFIDAVIT**

## PENALTY SUMMARY

**DATE:** October 5, 2009

**DEFENDANT NAME:** CLAY E. MCDONALD

**VICTIM:** YES

**OFFENSE AND PENALTIES:**

**OFFENSE:** Ct. 1: 18 U.S.C. § 1343
(Wire Fraud)

**PENALTIES:** 20 YEARS IMPRISONMENT
$250,000 FINE
3 YEARS SUPERVISED RELEASE
$100 SPECIAL ASSESSMENT
Class C Felony

**TOTALS:** 20 YEARS IMPRISONMENT
$250,000.00 FINE
3 YEARS SUPERVISED RELEASE
$100.00 SPECIAL ASSESSMENT

**AGENT:** Sean Lister, FBI   **AUSA:** Lisa E. Leschuck

**ESTIMATED TIME OF TRIAL:**   **INTERPRETER NEEDED:**

✓ five days or less          ____ Yes
____ over five days          ✓ No
____ other

**THE GOVERNMENT:**

____ will

✓ will not

SEEK DETENTION IN THIS CASE.

____ The court should not grant bond because the defendant is not bondable because there are detainers from other jurisdictions